UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOSEPH FULTON, a/k/a KARL SIMMONS,

                          Plaintiff,

                                                                                   05 Civ. 3652 (PKC)

              -against-

                                                                                       MEMORANDUM
                                                                                       AND ORDER

NEW YORK CITY POLICE OFFICER VICTORIA
FELDER. et. .al.,

                        Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Joseph Fulton, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against members of the New York City Police Department ("NYPD"), the New York City Transit Authority ("NYCTA") and the City of New York. By stipulation dated June 12, 2006, and entered as an Order of this Court on June 26, 2006, all claims against the individual defendants and the City of New York were dismissed. (Docket # 40, 41) The NYCTA is the sole remaining defendant. Plaintiff contends that the NYCTA, through its agent or employees, provided false information to the NYPD which resulted in plaintiff's arrest.

        The Complaint in this action was filed on April 11, 2005 and amended on November 11, 2005. Discovery in this action is now closed. The NYCTA now moves for summary judgment, contending that plaintiff has failed to come forward with any evidence which would permit a reasonable factfinder to conclude that the NYCTA violated any of plaintiff's federally protected rights. For the reasons discussed below, defendant's motion is granted in full.

A.      BACKGROUND AND THE AMENDED COMPLAINT

Shortly after 8 a.m. on the morning of October 12, 2004, plaintiff entered the downtown side of the 116th Street subway station where he intended to board the southbound A train. (Fulton Dep. 97-99)  The subway station is run and staffed by the NYCTA.  Plaintiff was standing outside of the turnstiles at a machine which permitted him to check the balance on his Metrocard when he was observed by Police Officers, Roxanne Marrero and Alan McMickens, of the NYPD.  The Officers were on the other side of the turnstiles and appeared to plaintiff to be approaching him. (Fulton 103-4; 108; 110-11)  The NYPD Officers arrested plaintiff and, according to Fulton, drew their weapons; they took Fulton by patrol car to the transit police station located at 145th and Saint Nicholas Avenue. (Fulton Dep. 131)  Plaintiff was charged with unlawful solicitation and remained in custody until March 15, 2005, when the charge against him was dismissed.

The allegations in the Amended Complaint ("AC") are largely rooted in the conduct of dismissed parties, including the individual officers responsible for plaintiff's arrest and the City of New York. (AC ¶¶ 27-31; 35-40)[1]  Plaintiff alleges that immediately following his arrest, McMickens "went into the Token Booth, and spoke with the New York City Transit Authority Token Booth Clerk." (AC ¶ 9)  Fulton further alleges that Officer Marrero told him that she had "received a radio transmission from her commanding dispatcher; saying that a complaint was made by the Defendant New York City Transit Authority, stating someone was in

---

[1] Throughout the AC, plaintiff refers to the arresting officers as "New York City Transit Police."  However, it appears from the record before me that in 1995, the NYCTA police force was incorporated into the NYPD, which is an agency of the City of New York. (Smith Dec. ¶ 3)  Similarly, the NYCTA police stations have been transferred to the NYPD. (Smith Dec. ¶ 4)  Additionally, I note that the AC skips from paragraph 21 to paragraph 23, omitting paragraph 22.  Plaintiff appears to have manually renumbered the paragraphs following 21 in the copy of the AC submitted with his opposition to summary judgment.  However, I rely on the original version of the AC filed with this Court rather than the renumbered version.

the subway harassing people and preventing them from getting on the train." (AC ¶ 15)  These are the sole factual allegations directly relating to defendant NYCTA.

Count III of the Amended Complaint is entitled "42 U.S.C. 1983 Against New York City Transit Authority."  In Count III, plaintiff alleges that the NYCTA "through is agent(s), and/or employee(s) falsely accused the Plaintiff of harassing and preventing people from getting on the train; thereby had Plaintiff falsely arrested and illegally searched and imprisoned for acts that Plaintiff never committed." (AC ¶ 34)  Further, plaintiff alleges that NYCTA "developed and maintained policies and customs which allows their agents(s), and or employee(s) to exhibit deliberate indifference to the constitutional rights of persons in the City of New York, which cause the violation of plaintiff's rights." (AC ¶ 35)  Plaintiff seeks both compensatory and punitive damages from defendant. (AC ¶¶ a-d)

B.   SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Where a plaintiff is proceeding pro se, the

court must read the pleadings liberally and view them as raising the strongest arguments that are suggested therein. McEachin v. McGunnis, 357 F.3d 197, 200 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citation omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Fed. R. Civ. P. 56(c). Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587)); see also Anderson, 477 U.S. at 249-50 (noting that summary judgment should be granted if the evidence is "merely colorable" or

"not significantly probative"). In the absence of any disputed material fact, summary judgment is appropriate. Fed. R. Civ. P. 56(c).

  C.  <u>DISCUSSION</u>

    a. <u>Federal Claims</u>

  To state a claim under section 1983, a plaintiff must allege he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 49 (1999). Section 1983 does not itself provide any substantive rights but rather provides a procedural mechanism for redress of rights which are established elsewhere. <u>See</u> <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993), <u>cert. denied</u>, 512 U.S. 1240 (1994). The NYCTA is a suable entity under section 1983 as it is an entity of the state government. <u>See</u> <u>New York Magazine v. Metropolitan Transit Auth.</u>, 987 F.Supp. 254, 260 (S.D.N.Y. 1997) (citation omitted). A plaintiff asserting a section 1983 claim against any governmental entity may not do so pursuant to a theory of respondeat superior. <u>Raysor v. Port Authority of New York and New Jersey</u>, 768 F.2d 34, 38 (2d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1027 (1986). Rather, in order to assert a claim against a governmental entity, including the NYCTA, under section 1983, a plaintiff must allege a pattern or practice resulting in a violation of his constitutional rights. <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978); <u>Ricciuti v. New York City Transit Auth.</u>, 41 F.2d 119, 122 (2d Cir. 1991).

  To successfully pursue a section 1983 claim under <u>Monell</u>, a plaintiff must establish that his or her constitutional rights have been violated pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "pursuant to governmental 'custom' even though such a custom has not received formal approval

through the body's official decisionmaking channels." 436 U.S. at 690-91.  Monell claims are cognizable only where there is an underlying constitutional violation and, therefore, absent a constitutional violation, any corresponding claim against a government entity will fail. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006); Amato v. City of Saratoga Springs, 170 F.3d 311, 320 (2d Cir. 1999).

The Amended Complaint appears to allege a Monell claim, (AC ¶ 35), a reading which plaintiff confirms in his papers filed in opposition to defendant's motion.  In support of his Monell claim, plaintiff has cited the NYCTA rule which prohibits "the solicitation of money or payment for food, goods, services or entertainment" and states that "[n]o person shall panhandle or beg upon any facility and conveyance." 21 NYCRR § 1050.6(b)(2).  The NYCTA policy was the subject of a constitutional challenge contending that the regulation, by prohibiting solicitation and begging in subways, constituted an unconstitutional restriction on speech in violation of the federal and New York State constitutions. See Young v. New York City Transit Auth., 903 F.2d 146 (2d Cir. 1990), cert. denied, 498 U.S. 984 (1990).  The Second Circuit rejected this claim, finding the statute violative of neither constitution. Id. at 164.  No claim is or was made that the regulation violates other federal law.  Standing alone, an arrest pursuant to the anti-solicitation rule does not violate the constitution or other federal, a necessary predicate for a Monell claim.  Further, defendants correctly contend that plaintiff has identified no other evidence of any policy or custom pursuant to which the NYCTA allegedly acted.  No reasonable fact finder could conclude that the NYCTA, acting pursuant to policy or custom, violated plaintiff's constitutional or other federal rights.  Accordingly, Fulton's Monell claim fails.

Count III of the Amended Complaint asserts that plaintiff was "falsely arrested" as well as alleges that as a result of the false arrest, plaintiff was falsely prosecuted and

imprisoned. (AC ¶ 34)  Also, generously read, the Amended Complaint, asserts a claim for civil conspiracy. (AC ¶¶ 25, 27 i-iii)  A section 1983 claim alleging a civil conspiracy remains subject to the requirements of traditional 1983 claims. Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996).  Therefore, where a government entity is one alleged conspirator, a plaintiff must demonstrate that imposition of liability under Monell is proper in order to have a successful claim for civil conspiracy. See Field Day LLC v. County of Suffolk, 2005 WL 2445794, *21-22 (E.D.N.Y. Sep. 30, 2005), aff'd, 463 F.3d 167 (2d Cir. 2006).  Similarly, while claims for false imprisonment and malicious prosecution may be based on a theory of respondeat superior where they are asserted as state law claims, they must satisfy Monell when asserted under section 1983.  Raysnor, 768 F.2d at 38; Jones v. State of New York, 33 N.Y.2d 275 (1973).

In response to defendant's summary judgment motion, plaintiff has come forward with no facts which would support a Monell-type claim for conspiracy, false arrest, false imprisonment or malicious prosecution.  Accordingly, all federal claims are dismissed.

### b. Supplemental Jurisdiction Over Any State law Claims

I have also considered whether any of plaintiff's claims ought to survive if they were to be construed as state common law claims for civil conspiracy, false arrest, false imprisonment or malicious prosecution.[2]  In Valencia ex rel. Franco v. Lee, 316 F.3d 299 (2d Cir. 2003), the district court had dismissed all federal claims, including one asserted under section 1983, and continued to exercise supplemental jurisdiction over state law claims, invoking 28 U.S.C. § 1367.  The Court of Appeals noted that "[i]n providing that a district court 'may' decline to exercise such jurisdiction, this subsection is permissive rather than mandatory." Id. at

---

[2] New York does not recognize an independent tort of civil conspiracy.  See New Dimensions Spa, Inc. v. Fitness Place Rockville Centre, Inc., 187 A.D. 2d 493, 494 (2d Dept. 1992)

305 (citations omitted). "The proper scope of the district court's discretion . . . is not boundless. Id. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (citing Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Here, I decline to exercise supplemental jurisdiction because (1) no common law claims are expressly pled and I only consider them by way of a generous reading of a pro se pleading; (2) from a review of plaintiff's response to defendant's summary judgment motion, any common law claim that did survive would appear to be of little merit; and (3) the case is not trial ready and would require a substantial additional judicial effort in securing and reviewing a joint pretrial order, in limine motions, exhibit and witness lists, stipulations, voir dire requests, jury instructions and verdict form prior to trial. Accordingly, if and to the extent that plaintiff has alleged any state common law claims against the NYCTA, I decline to exercise supplemental jurisdiction over them.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted as to all federal claims. I decline to exercise supplemental jurisdiction over any state law claims. The Clerk shall enter judgment in favor of defendants.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 1, 2007